**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| COURTNEY ANN ALTEMUS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 2:21-cv-04700 |
| | : | |
| RALPH SAMPSON, JR.; WINNER'S CIRCLE | : | |
| VENTURES, LLC, | : | Jury Trial Demanded |
| Defendant. | : | |

_____

**COMPLAINT**

Plaintiff, Courtney Ann Altemus ("Plaintiff" or "Altemus"), files this Complaint against Defendant, Winner's Circle Ventures, LLC ("WCV") for breach of contract, unjust enrichment and promissory estoppel. Plaintiff also brings suit against Defendant Ralph Sampson, Jr. ("Sampson") for unjust enrichment and promissory estoppel. Altemus loaned WCV $560,000.00 pursuant to a promissory note executed by WCV's CEO, Sampson. Sampson came to Altemus pleading for the funds in order to fund WCV and purchase the farm owned by Sampson's grandparents. Despite Sampson's countless assurances and promises that he and/or WCV would repay the Promissory Note, he and WCV have failed to do so. Thus, Altemus files suit to demand repayment of the Promissory Note (and all other costs and charges permissible under the Promissory Note and/or law). In support, Altemus alleges as follows:

**PARTIES**

1. Altemus is a natural person domiciled within Montgomery County, Pennsylvania.

2. Sampson is a natural person domiciled within the Commonwealth of Virginia.

3.      WCV is a limited liability company domiciled within the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4.      As the parties in this case are diverse and the amount in controversy exceeds $75,000, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

5.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court because WCV and Sampson sought and obtained the loan at issue in this litigation from Altemus, a citizen of Montgomery County.

## FACTUAL BACKGROUND

6.      Sampson is a well-known former collegiate and professional basketball player and personality within the basketball and related investment communities.

7.      Altemus became acquainted with Sampson through her connections and work within the collegiate and professional athletic community.  Prior to the issues in this litigation, Altemus had no reason to question Sampson's integrity or business ethics.  At all relevant times prior to Altemus' extension of a loan to WCV at Sampson's behest, Sampson represented himself as a successful businessman and entrepreneur.  Indeed, for over a year prior to when Sampson approached Altemus for a short-term loan, Puma, the apparel company, had relaunched a line of Sampson-branded basketball shoes.  *See* https://www.forbes.com/sites/timnewcomb/2019/09 */06/ralph-sampson-enjoying-resurgence-of-puma-basketball-his-signaturesneaker/?sh=ae00b48 55182*.  In fact, Puma marketed the Sampson-branded basketball shoe using Sampson's likeness, as shown below in the Puma marketing image depicting Sampson holding a Sampson-branded basketball shoe:

2



Of course, as Sampson's name and likeness were associated with a large apparel enterprise marketing a shoe bearing his name, Altemus had no reason to believe that Sampson, and his venture WCV, were unable or unwilling to pay their debts.

8.      Around July 1, 2020, Sampson, after establishing a friendship with Altemus, requested a short-term loan from Altemus to fund a venture fund—WCV—and in order to close on a deal in which Sampson and a group of family members would purchase his grandparents' family farm (the "Farm") through a buy-out of any family members who did not want ownership. The requested loan amount was $560,000.

9.      Sampson, the CEO of WCV, contacted Altemus on the eve of a self-described deadline to obtain funds to purchase the Farm pleading with Altemus to loan the necessary funds. Sampson also relayed that the Farm was to be the site of the bill signing for the Virginia Uniform Partition of Heirs Property Act, which was designed to "streamline the process of retaining farm

3

properties for those who wish to continue the [farm] operation while fairly compensating those who do not, and keeping families on generational land without the risk of developers offering unfair prices for land to estranged family or distant relations who may have inherited part of the property."  *See https://www.dnronline.com/news/northam-signs-heirship-bill-on-mcgaheysville-farm/article_e618e41e-4b91-579d-9055-3f707ba566f1.html.*

10.     Sampson assured Altemus that the loan would be repaid within three months and described the loan as an opportunity to generate a "great short-term yield" on Altemus' funds.

11.     Based upon Sampson's assurances that the capital was required for no more than three months; Sampson's representations regarding why the loan was required; Sampson's status as well-known and well-respected former collegiate and professional basketball player, sports personality, and investment professional; and Altemus' desire to help her friend and support such noble cause, she agreed to briefly lend $560,000.

12.     On July 2, 2020, WCV and Altemus executed a promissory note (the "Promissory Note" or "Agreement") evidencing that Altemus loaned WCV $560,000.  A copy of the Promissory Note is attached hereto as **Exhibit A.**

13.     Pursuant to the Agreement, Altemus lent $560,000 on July 2, 2020.

14.     Pursuant to the terms of the Promissory Note, WCV agreed to repay Altemus $560,000, at a rate of 6.125% per annum.  The Promissory Note further provided that "[t]he unpaid principal and accrued interest shall be payable in full on September 30, 2020."  *See* Exhibit A at I.A.

15.     Sampson made personal assurances that the Promissory Note would be repaid during the negotiation of the Promissory Note and after WCV's default thereunder.

16.     The Promissory Note also provided that an event of default would occur upon the "failure of the Borrower to pay the principal and any accrued interest when due." *Id.* at IV.1.

17.     In the event of WCV's nonpayment, the Promissory Note provides that "the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process." *Id.* at III.

18.     Upon information and belief, Altemus understands that Sampson, through WCV, purchased the Farm.  Altemus further understands, upon information and belief, the Sampson enjoys the full right and enjoyment of the Farm.

19.     On September 3, 2020, in advance of the September 30, 2020 maturity date of the Promissory Note, Altemus provided Sampson with her bank information for Sampson to render payment.  Sampson did not respond to this email.  An email thread between Altemus and Sampson is attached as **Exhibit B.**

20.     On September 13, 2020, Altemus responded to her September 3 email, including a copy of the Promissory Note and wrote to Sampson "[g]iven that we are unlikely to speak prior to 9/30, wanted to extend the courtesy of a reminder with ample time to arrange repayment.  If you have any questions, feel free to email." *Id.*  Again, Sampson did not respond.

21.     WCV and Sampson failed to repay the Promissory Note on September 30, 2020.

22.     On November 2, 2020, after WCV failed to repay the Promissory Note, Altemus wrote to Sampson that, "[a]ccording to the promissory note you signed below, my loan to you is 33 days past due.  Please wire the full amount, $560,000.00 plus interest 6.125% for 33 days, $3,101.00, total:  $563,101.00 to the wire instructions below by close of business today." *Id.* Again, Sampson failed to respond.

5

23.     Once again, on January 27, 2021, Altemus followed-up with Sampson, stating "[w]e're over 200 days . . . [p]lease repay, thanks."  *Id.*

24.     Again, on February 6, 2021, Altemus emailed Sampson regarding WCV's payment of the Promissory Note.  Sampson did not respond.

25.      On March 19, 2021, Altemus demanded payment from WCV once again.  In her email, Altemus wrote to Sampson "I have given ample time and understanding well beyond when the loan was due because I trusted your verbal promises to pay.  I obviously can no longer accept verbal promises as there have been several that you have not fulfilled."  *Id.*  Once again, Sampson did not respond.

26.     Once again, on May 7, 2021, Altemus sent Sampson an email entitled "FINAL NOTICE!!!!!!!!!!!!!!!!," in which she summarized Sampson's and WCV's refusal to acknowledge responsibility to repay the Promissory Note:  "7 emails, dozens of verbal promises.  Nothing.  PAYMENT IS DUE TODAY."  *Id.*  Sampson, true to form, did not respond to Altemus' email.

27.     On May 29, 2021, Altemus sent Sampson an email as well as a written demand for payment of the Promissory Note.  Copies of Altemus' email and written demand are attached, respectively, as **Exhibit C** and **Exhibit D**.  In Altemus' email, she wrote "Despite my repeated attempts via email, text and conversation and your repeated promises to pay, I've not received payment.  In 4 days, we will be at 9 months past the original due date.  I've obviously been trusting, reasonable and patient and given you every opportunity to pay the money you owe.  Please fulfill your obligation."  Sampson, once again, did not respond.

28.     On June 18, 2021, after responding to yet another demand for payment from Altemus, Sampson incredulously wrote to Altemus "Just wanted to thank  you for your support.  I can project that payment will be made between July 12 to July 30.  Once I get confirmation I will

6

give you a call." Despite Sampson's projection, payment was never rendered. Further, Sampson expressed no remorse whatsoever for his and WCV's wanton refusal to satisfy their responsibilities and refusal to acknowledge Altemus' repeated demands for payment.

29.     As referenced in Altemus' multiple emails to Sampson, she had numerous conversations with Sampson over text messages and telephonically wherein Sampson promised to repay the Promissory Note and offered various excuses for WCV's failure to pay.

30.     Altemus engaged counsel to obtain repayment on the Promissory Note. On a near-daily basis, Sampson promised Altemus' counsel that he and/or WCV would repay the Promissory Note.

31.     Among Sampson's excuses to Altemus and her counsel for failing to repay the promissory note include that: investors that he believed would invest in WCV "screwed him" and failed to invest, his "funds were tied up," his banking accounts had a lien on them for nonpayment of taxes, Sampson "had to move accounts to a different bank," and that his bank stated it could not wire the funds to Altemus.

32.     Repayment of the Promissory Note was never conditioned on WCV or Sampson obtaining subsequent investors.

33.     As of the date of the filing of this Complaint, despite Sampson's numerous empty promises of repayment, WCV has not repaid a penny on the Promissory Note.

34.     The maturity date of the Promissory Note has passed without payment.

35.     WCV is therefore in breach of the Agreement.

## COUNT I
## BREACH OF CONTRACT
### (Against WCV)

36.     Altemus incorporates all of the previous allegations of the Complaint as if set forth at length herein.

37.     The Agreement constitutes a valid and enforceable contract between Altemus and WCV.

38.     According to the Agreement, WCV has a contractual obligation to pay Altemus the principal sum of $560,000.00 together with interest on the unpaid balance at an annual rate of 6.125% percent no later than September 30, 2020.  *See* Exhibit A.

39.     Altemus has fulfilled all of her obligations under the Agreement, including any conditions precedent.

40.     WCV has breached the Agreement by failing to pay the full amount owed to Altemus by September 30, 2020.

41.     WCV has made no payments to Altemus under the Agreement.

42.     Interest has accrued at the contractual rate of 6.125 percent per year, which as of October 26, 2021, totals $45,200.82

43.     Altemus has incurred and continues to incur collections costs, including attorneys' fees, which the Agreement requires WCV to pay in the event of default.  *See id.*

44.     As a direct and proximate result of WCV's breach of its contractual obligation, Altemus has been damaged in the total amount of $605,200.82 (plus collections costs and attorneys' fees).

PHIL1 9725150v.1

WHEREFORE, Altemus demands judgment against WCV, in the amount $605,200.82, attorneys' fees, collections costs, costs of suit, interest at the rate of 6.125%/annum and any such other and further relief as the Court deems just and equitable.

## COUNT II
## UNJUST ENRICHMENT (In the Alternative)
### (Against WCV)

45.     Altemus incorporates all of the previous allegations of the Complaint as if set forth at length herein.

46.     By lending $560,000 to WCV, Altemus conferred a benefit upon WCV to which it was not otherwise entitled.

47.     As reflected by the Agreement, Altemus expected WCV to repay the loan in the principal sum of $560,000 together with interest on the unpaid balance at an annual rate of 6.125%.

48.     Because of WCV's failure to pay the amounts due under the Agreement, WCV has been unjustly enriched to the detriment of Altemus.

49.     It would be inequitable to allow WCV to retain the benefits of the $560,000 loan, including interest.

WHEREFORE, Altemus demands judgment against WCV, in the amount $605,200.82, attorneys' fees, collections costs, costs of suit, interest at the rate of 6.125%/annum and any such other and further relief as the Court deems just and equitable.

## COUNT III
## UNJUST ENRICHMENT
### (Against Sampson)

50.     Altemus incorporates all of the previous allegations of the Complaint as if set forth at length herein.

9

51.     By lending the funds necessary to purchase the Farm, Altemus conferred a benefit upon Sampson to which he was not otherwise entitled.  Namely, upon information and belief, Sampson has full rights and enjoyment of the Farm.

52.     As reflected by the Agreement, Altemus expected WCV to repay the loan in the principal sum of $560,000 together with interest on the unpaid balance at an annual rate of 6.125%. Sampson assured Altemus that he would ensure that she was repaid within three months of the Promissory Note.

53.     Because of WCV's and Sampson's failure to pay the amounts due under the Agreement, Sampson has been unjustly enriched to the detriment of Altemus.

54.     It would be inequitable to allow Sampson to retain the benefits of the $560,000 loan, including interest.

WHEREFORE, Altemus demands judgment against Sampson, in the amount of $605,200.82,  attorneys' fees, collections costs, costs of suit, interest at the rate of 6.125%/annum and any such other and further relief as the Court deems just and equitable.

**COUNT IV**
**PROMISSORY ESTOPPEL (In the Alternative)**
**(Against WCV)**

55.     Altemus incorporates all of the previous allegations of the Complaint as if set forth at length herein.

56.     As reflected in the Agreement, WCV promised to pay Altemus an amount equal to the principal sum of $560,000 together with interest on the unpaid balance at an annual rate of 6.125%, and promised to pay Altemus' attorneys' fees and costs in any collection efforts.

57.     WCV should have reasonably expected that such promises would induce Altemus to extend the loan.

10

58.     In reliance on WCV's promises, Altemus loaned WCV $560,000.

59.     WCV accepted the $560,000 loan from Altemus but has failed to repay the principal and accrued interest.

60.     Injustice can only be avoided by requiring WCV to repay Altemus $560,000 with interest, as well as Altemus' attorneys' fees and costs.

WHEREFORE, Altemus demands judgment against WCV, in the amount $605,200.82, attorneys' fees, collections costs, costs of suit, interest at the rate of 6.125%/annum and any such other and further relief as the Court deems just and equitable.

### COUNT V
### PROMISSORY ESTOPPEL
#### (Against Sampson)

61.     Altemus incorporates all of the previous allegations of the Complaint as if set forth at length herein.

62.     Sampson promised to abide by the terms of the Promissory Note and to pay Altemus an amount equal to the principal sum of $560,000 together with interest on the unpaid balance at an annual rate of 6.125%, and promised to pay Altemus' attorneys' fees and costs in any collection efforts.

63.     Sampson should have reasonably expected that such promises would induce Altemus to extend the loan.

64.     In reliance on Sampson's promises, Altemus loaned WCV $560,000.

65.     WCV accepted the $560,000 loan from Altemus but has failed to repay the principal and accrued interest.

66.     Upon information and belief, Sampson has enjoyed full right and enjoyment of the Farm.

11

67.     Injustice can only be avoided by requiring Sampson to repay Altemus $560,000 with interest, as well as Altemus' attorneys' fees and costs.

WHEREFORE, Altemus demands judgment against WCV, in the amount of $605,200.82, attorneys' fees, collections costs, costs of suit, interest at the rate of 6.125%/annum and any such other and further relief as the Court deems just and equitable.

**KLEHR HARRISON HARVEY BRANZBURG LLP**

Dated:  October 26, 2021                    By: _/s/_     _Gregory R. Sellers_
                                                                  Gregory R. Sellers (I.D. No. 316273)
                                                                  1835 Market Street, Suite 1400
                                                                  Philadelphia, PA  19103
                                                                  Phone: (215) 569-2700
                                                                  Facsimile: (215) 568-6603
                                                                  _Attorneys for Plaintiff_

PHIL1 9725150v.1

# EXHIBIT A

## *PROMISSORY NOTE*

$560,000.00                                        Date: July 02, 2020

For value received, the undersigned Winner's Circle Ventures, LLC of 2040 Deyerle Ave, Harrisonburg, Virginia 22801 (the "Borrower"), promises to pay to the order of Courtney Ann Altemus of 516 E. Gravers Lane, Wyndmoor, Pennsylvania 19038 (the "Lender"), the sum of $560,000.00 with interest from July 02, 2020, on the unpaid principal at the rate of 6.125% per annum.

## I. TERMS OF REPAYMENT

### A. Payments

The unpaid principal and accrued interest shall be payable in full on September 30, 2020 (the "Due Date").

### B. Application of Payments

All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal.

### C. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be accompanied by payment of accrued interest on the amount prepaid to the date of prepayment.

## III. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

1) the failure of the Borrower to pay the principal and any accrued interest when due;

2) the liquidation, dissolution, incompetency or death of the Borrower;

3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower;

7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

8) the sale of a material portion of the business or assets of the Borrower.

## V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VI. MISCELLANEOUS

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly

installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

## VII. GOVERNING LAW

This Note shall be construed in accordance with the laws of the State of Pennsylvania.

## VIII. SIGNATURES

This Note shall be signed by Ralph Sampson, Jr. on behalf of Winner's Circle Ventures, LLC, and Courtney Ann Altemus.

**[SIGNATURE PAGE FOLLOWS]**

This Promissory Note is executed and agreed to by:

*Courtney Ann Altemus*

Courtney Ann Altemus
caltemus@team-altemus.com
July 02, 2020 at 09:38 am
Recorded at IP 73.13.228.16

*Ralph Sampson jr*

Ralph Sampson jr
rsampson@wcventure.com
July 02, 2020 at 10:26 am
Recorded at IP 71.63.39.208

# EXHIBIT B



From: **Courtney Altemus** courtney.a temus@comcast.net
Subject: FINAL NOTICE!!!!!!!!!!!!!!!!!!!!!
Date: May 7, 2021 at 9:31 AM
To: Ra ph Sampson rsampson@wcventure.com, Ra ph Sampson st ckfive@ao .com



Advance reminder and wire instructions: 9/3/20, next advance reminder 9/13/20, demand for payment #1: 11/2/20, demand for payment #2: 1/27/21, demand for payment #3: 2/6/21, demand for payment #4: 3/19/21, final demand for payment (#5): 5/7/21.

7 emails, dozens of verbal promises. Nothing. PAYMENT IS DUE TODAY.

Begin forwarded message:

**From:** Courtney A temus <ca temus@team-a temus.com>
**Subject: Fwd: Reminder due 9/30/20**
**Date:** March 19, 2021 at 6:06:09 PM EDT
**To:** Ra ph Sampson <rsampson@wcventure.com>, Ra ph Sampson <stickfive@ao .com>

Original loan amount $560,000.00
Issue Date: 7/2/20
Interest rate: 6.125
Original due date: 9/30/20
Days outstanding: 260

Total due: $584,440.00

I just checked my account and the funds aren't there. If you've already wired, please let me know so I can check again later.

If you haven't paid yet, please be sure to pay NO LATER than next business day which is Monday, March 22, 2021.

I have given ample time and understanding well beyond when the loan was due because I trusted your verbal promises to pay. I obviously can no longer accept verbal promises as there have been several that you have not fulfilled.

Wire instructions from original email on 9/30/20:



Begin forwarded message:

**From:** Courtney Altemus <courtney.altemus@comcast.net>
**Subject: Fwd: Reminder due 9/30/20**
**Date:** February 6, 2021 at 9:54:52 AM EST
**To:** Ralph Sampson <rsampson@wcventure.com>

Hi, Original loan amount $560,000.00. Interest rate 6.125%. Was due 9/30/20. On Monday,

2/8 it will be 221 days outstanding.

Due Monday 2/8/21: $594,300.00 according to my math, please verify my calculation.

As you know, wire instructions are included in the original email from 9/3/20.

Begin forwarded message:

**From:** courtney altemus <caltemus@team-altemus.com>
**Subject: Fwd: Reminder due 9/30/20**
**Date:** January 27, 2021 at 9:54:03 AM EST
**To:** Ralph Sampson <rsampson@wcventure.com>

Hi, just a reminder that the interest rate is the rate I'm required to pay in order to borrow against my securities to lend money to you. It's actually gone up since I lent it to you. Net/net I will have paid more to give the loan than I'll ever be repaid and I haven't been able to do any rebalancing so I'll owe more taxes. It's just another layer of the sad irony...I've been paying to keep a loan outstanding to you and trusting all this time.


Courtney A. Altemus
(610) 592-5669


TeamAltemus
Philadelphia, PA
www.Team-Altemus.com
IG | FBOOK | TWITTER:
@TeamAltemus


Begin forwarded message:

**From:** Courtney Altemus <caltemus@team-altemus.com>
**Date:** January 27, 2021 at 9:11:41 AM EST
**To:** Ralph Sampson <rsampson@wcventure.com>, Ralph Sampson <stickfive@aol.com>
**Subject: Fwd: Reminder due 9/30/20**

Hi,

Wire instructions at the bottom. We're over 200 days but didn't count exactly for interest calculation.

Please repay, thanks.

Begin forwarded message:

**From:** Courtney Altemus <caltemus@team-altemus.com>
**Subject: Fwd: Reminder due 9/30/20**

**Date:** November 2, 2020 at 9:22:52 AM EST
**To:** Ralph Sampson <rsampson@wcventure.com>, Ralph Sampson
<stickfive@aol.com>

Ralph,

According to the promissory note you signed below, my loan to you is 33 days past due.
Please wire full amount, $560,000.00 plus interest 6.125% for 33 days, $3,101.00, total:
$563,101.00 to the wire instructions below by close of business today.

Sincerely,
Courtney Altemus

Begin forwarded message:

**From:** Courtney Altemus <caltemus@team-altemus.com>
**Subject: Reminder due 9/30/20**
**Date:** September 13, 2020 at 11:34:17 AM EDT
**To:** Ralph Sampson <rsampson@wcventure.com>, Ralph Sampson
<stickfive@aol.com>

Copy of promissory note attached. Given that we are unlikely to speak prior to 9/30,
wanted to extend the courtesy of a reminder with ample time to arrange repayment.

If you have any questions, feel free to email.

Thanks,
Courtney



WCV loan
note.pdf

Begin forwarded message:

**From:** Courtney Altemus <caltemus@team-altemus.com>
**Subject: Wire info**
**Date:** September 3, 2020 at 5:45:35 PM EDT
**To:** Ralph Sampson <rsampson@wcventure.com>

Hi,

For loan the loan due on 9/30/20:

REDACTED



REDACTED

Thanks,
C

# EXHIBIT C

From: Rsampson@wcventure.com
Subject: RE: Demand for Payment
Date: June 18, 2021 at 9:13 AM
To: Courtney A temus courtney.a temus@comcast.net

RS

Hello,

Just wanted to thank  you for your support.  I can project that the payment will be made between July 12 to July 30.  Once I get confirmation I will give you a call.

Thanks

Ralph Sampson

**From:** Courtney Altemus <courtney.altemus@comcast.net>
**Sent:** Tuesday, June 15, 2021 6:12 PM
**To:** Ralph Sampson <rsampson@wcventure.com>
**Subject:** Fwd: Demand for Payment

Ralph,

The due date in the demand letter was today.

You sent some "update" that this is going to be repaid during the week of 6/21. What date do you plan to repay it? For the sake of a few more days, I will extend the courtesy of agreeing to wait for payment provided you commit to a date NO LATER  than the week of 6/21/21.

Please email me the date you will pay. If the date is later than 6/25/21 or if you don't pay in full by the date you commit to, I will no longer extend the courtesy of waiting.

If I don't receive a commitment from you with a date certain, I'll have to assume you don't intend to pay.

Sincerely,
Courtney

Begin forwarded message:

**From:** Courtney Altemus <courtney.altemus@comcast.net>
**Subject: Demand for Payment**
**Date:** May 29, 2021 at 4:46:20 PM EDT
**To:** Ralph Sampson <rsampson@wcventure.com>
**Cc:** CAA Altemus <courtney.altemus@comcast.net>

Ralph,

Please find enclosed a demand for payment-in-full, principal plus accrued interest for the loan dated 7/2/20. I've attached the original executed promissory note which was due 9/30/20 and the 7 email courtesy requests

promissory note which was due 9/30/20 and the 7 email courtesy requests for payment.

Despite my repeated attempts via email, text and conversation and your repeated promises to pay, I've not received payment. In 4 days, we will be at 9 months past the original due date. I've obviously been trusting, reasonable and patient and given you every opportunity to pay the money you owe. Please fulfill your obligation.

Thank you,
Courtney


Via email and physical mail

# EXHIBIT D

Courtney Ann Altemus
Courtney Altemus
516 E. Gravers Lane
Wyndmoor, Pennsylvania 19038

May 29, 2021

Ralph Sampson, Jr.
CEO
Winner's Circle Ventures, LLC
2040 Deyerle Avenue
Harrisonburg, Virginia 22801
rsampson@wcventure.com

Dear Ralph Sampson, Jr.:

The purpose of this letter is to demand payment of money owed regarding your Promissory Note.

On July 02, 2020, you signed a Promissory Note in my favor for the original principal amount of $560,000.00. The unpaid principal balance of this note is $560,000.00.

In addition, on July 02, 2020, interest began to accrue at a rate of 6.125% per annum. As of May 29, 2021, the accrued interest you owe equals $31,104.93.

As you can see by the enclosed copy of the Promissory Note, you are now past due in making payment. Demand is made upon you for full payment of the following amount:

Principal Balance $560,000.00

Accrued Interest $31,104.93

*Total* $591,104.93

Further, you must pay an additional $95.00 in accrued interest and $95.00 in late charges for each day after June 15, 2021 that the amount due remains unpaid.

If payment is not made by June 15, 2021, legal action to enforce your obligations under the Promissory Note may be taken. Please give this matter your prompt attention.

This is the physical address and email address that you listed and these are the addresses that I will be using to correspond with you unless I am given updated information; which I have not been given up to this point. You may contact me if you have any questions or need additional

information. I can be contacted by phone at 6105925669 . I can be contacted via e-mail at courtney.altemus@comcast.net.

Sincerely,

Courtney Ann Altemus

Enclosure